# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| 250 EXECUTIVE, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N22C-03-190 FWW |
| CHRISTINA SCHOOL DISTRICT | ) | |
| and CHRISTINA SCHOOL | ) | |
| DISTRICT BOARD OF EDUCATION, | ) | |
| | ) | |
| Respondents. | ) | |

Submitted: December 1, 2022
Decided: January 30, 2023
Corrected: February 1, 2023

*Upon Petitioner 250 Executive, LLC's Motion for Summary Judgment*
**GRANTED.**

*Upon Respondents Christina School District and Christina School District Board of Education's Motion for Summary Judgment*
**DENIED.**

## MEMORANDUM OPINION AND ORDER

Daniel F. McAllister, Esquire, MCALLISTER FIRM LLC, 800 North King Street, Suite 203, Wilmington, Delaware 19801, Attorney for Petitioner 250 Executive, LLC.

James H. McMackin, III, Esquire and Michelle G. Bounds, Esquire, MORRIS JAMES LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attorneys for Defendants Christina School District and Christina School District Board of Education.

**WHARTON, J.**

## I. INTRODUCTION

Petitioner 250 Executive, LLC ("250 Executive") brings this action against Christina School District and Christina School District Board of Education (collectively "the District"). 250 Executive alleges that the District impermissibly kept its erroneously overpaid taxes and seeks a refund for its nearly $70,000 in overpayment.

Before the Court are the parties' Cross Motions for Summary Judgment and all associated briefings. For the reasons set forth below, 250 Executive's Motion for Summary Judgment is **GRANTED** and the District's is **DENIED**. The matter is **REMANDED** to the Christina School District Board of Education for submission of 250 Executive's refund request to the receiver of taxes in accordance with this Opinion.

## II. FACTS AND PROCEDURAL HISTORY

250 Executive owns property within the District.[1] Several years ago, New Castle County ("the County") mismeasured the property, wrongly inflating its value.[2] Due to the inflated assessment, 250 Executive overpaid its property taxes from 2006 to 2019.[3] It overpaid a total of $69,244.52 to the

---

[1] Pet.'s Am. Compl., at ¶ 5, D.I. 5.
[2] *Id.* at ¶ 6–7; *see* Joint Stipulation of Facts, at ¶ 2, D.I. 9.
[3] Am. Compl., at ¶ 8–9, D.I. 5; *see* Joint Stipulation of Facts, at ¶ 2, D.I. 9. Taxes are based on a property's assessed value. Since 250 Executive's

1

District, $5,112.10 to New Castle County Vocational-Technical School District ("Vo-Tech"), and $24,016.03 to the County.[4] In 2019, 250 Executive discovered the error, had the property remeasured, and the building's valuation was appropriately reduced.[5]

In May 2020, in an effort to comply with the requirements of 14 *Del. C.* § 1921 (local county school taxes; "the Refund Statute") and 9 *Del. C.* § 8618 (county government refund), 250 Executive sent all three entities refund requests.[6] In July 2020, the District responded that it would schedule a hearing on the request once it received the County's determination letter.[7]

On January 12, 2021, the County adopted Resolution 21-004 ("the Resolution") which recognized that 250 Executive overpaid its county property taxes "in error."[8] The Resolution stated that "despite the error, the property owner, 250 Executive, LLC, paid the overstated New Castle County property taxes (and local school taxes) in good faith, on time, and in full, as billed by New Castle County[.]"[9]

---

property was assessed at a higher value, it had to pay more than what it actually owed. Am. Compl. ¶ 8, Resolution No. 21-004, Ex. C, D.I. 5.
[4] Am. Compl., at ¶ 9, D.I. 5; *see* Joint Stipulation of Facts, at ¶ 2, D.I. 9.
[5] Am. Compl., at ¶ 6–7, D.I. 5.
[6] *Id.* at ¶ 10, Ex. A, Ex. B.
[7] *Id.* at ¶ 14, Ex. E; Joint Stipulation of Facts, at ¶ 3, D.I. 9.
[8] Resolution No. 21-004, Ex. C, D.I. 5.
[9] *Id.*

250 Executive forwarded the Resolution to Vo-Tech[10] and the District.[11] Vo-Tech "exercised its discretion (*see*, 14 *Del. C.* § 1921) to approve the request and apply a credit of $5,112.10 to [250 Executive]."[12] Despite showing that it overpaid its taxes in error, the District did not approve 250 Executive's refund request.[13] Instead, the District placed the matter on its April 13, 2021 board meeting agenda.[14] Like all other requests for refunds of allegedly overpaid taxes, the board voted to reject 250 Executive's refund request.[15]

Details about the board meeting are scant. 250 Executive claims that the District "asked no questions" and that after rendering its decision "did not state their reasons on the record for their vote or their decision."[16] The District did not clarify in any of its written submissions or during oral argument what, if any, criteria were used to evaluate the merits of the refund request. Instead, it simply wrote, without specification, in answer to 250 Executive's Amended Complaint, that "[a]ny characterization of the hearing is denied as stated."[17]

---

[10] Am. Compl., Ex. D, D.I. 5.
[11] *Id.* at Ex. F.
[12] *Id.* at Ex. D. Based on the Resolution, the County also refunded the overpayment. *Id.* at ¶ 11.
[13] *See* Joint Stipulation of Facts, at ¶ 5–7, D.I. 9.
[14] Joint Stipulation of Facts, at ¶ 3, 5–6, D.I. 9
[15] *Id.* at ¶ 7–8.
[16] Am. Compl., at ¶ 17, D.I. 5.
[17] Ans. to Am. Compl., at ¶17, D.I. 6.

After the denial, 250 Executive filed suit in the Court of Chancery seeking a declaratory judgment declaring that the District violated the Refund Statute and a permanent injunction requiring the District comply with the statute.[18] The District moved for dismissal for lack of subject matter jurisdiction.[19] The Court of Chancery agreed and dismissed the case, holding that 250 Executive had an adequate remedy at law.[20] 250 Executive then exercised its right to transfer the case to this Court.[21]

250 Executive filed the current Complaint on March 24, 2022,[22] and its Amended Complaint on April 4, 2022.[23] It alleges that the District failed to follow Delaware law when it did not, as required by the Refund Statute, forward its refund request to the receiver of taxes and implored the Court to compel it to do so.[24] The District countered that "[t]he refund provisions at

---

[18] *250 Exec., LLC v. Christina Sch. Dist.*, 2022 WL 588078, at *1 (Del. Ch. Feb. 28, 2022).

[19] *Id.*

[20] *Id.* ("This decision grants the motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. It does not reach [250 Executive's cross-motion for judgment on the pleadings or, alternatively for summary judgment.]") *Id.* at *3.

[21] *Id.* at *7 (citing 10 *Del. C.* § 1902).

[22] Compl., D.I. 1.

[23] Am. Compl., D.I. 5. 250 Executive is seeking declaratory judgment, monetary damages, and for reimbursement pursuant to unjust enrichment. *Id.* at ¶21–34.

[24] *Id.* at ¶ 18–34.

4

issue are permissive, not mandatory, and inapplicable in this instance."[25]  It argues, *inter alia*, that its decision to refuse the refund request was "a valid exercise of [its] discretion."[26]

On June 10, 2022, 250 Executive and the District filed their respective Motions for Summary Judgment[27] and supporting Opening Briefs.[28]  Briefing was complete on July 15, 2022[29] and oral argument was held on December 1, 2022.[30]

### III.    THE PARTIES' CONTENTIONS

The parties disagree how the Refund Statute should be interpreted.  The statute states:

> Local county school taxes paid through error or by mistake may be refunded by the school district to which the taxes were paid as follows:
> (1) The person claiming a refund of taxes shall file with the board of the school district a request for refund under oath or affirmation stating the payment of the taxes, the person, firm, corporation, or association by whom the taxes were paid, and the date of payment and stating why it is believed the taxes were paid in error;

---

[25] Resps.' Ans. to Pet.'s Am. Compl., at 11:3, D.I. 6.

[26] *Id.* at 12:4. The District lists several other reasons why the Complaint is barred, including that the taxes were not paid in error and a failure to mitigate. *Id.* at ¶ 5–10.

[27] Pet.'s Mot. for Summ. J., D.I. 11; Resps.' Mot. for Summ. J., D.I. 16.

[28] Pet.'s Op. Br., D.I. 13; Resps.' Op. Br., D.I. 17.

[29] *See* Pet.'s Reply Br., D.I. 27.

[30] D.I. 30.

(2) The school board shall submit the request for refund to the receiver of taxes of the county for the receiver's approval of the payment of the refund and shall make no refund unless the receiver of taxes approves the refund in writing, except that capitation taxes may be refunded without such approval;

(3) The school board and the receiver of taxes shall keep a record of all refunds for at least 3 years, which record shall be open for public inspection during regular business hours.[31]

250 Executive argues that the statute, as indicated by its multiple uses of the term "shall," requires the District forward all refund requests to the county receiver of taxes.[32] 250 Executive also claims that the District's failure to comply with the Refund Statute "improperly blocked [its] only legal remedy to recover the money overpaid in taxes."[33] The District responds that the use of "may" indicates that the statute gives schools the discretion to make these determinations.[34] Further, someone needs to bear the consequences of this overpayment and since 250 Executive failed to recognize its property's

---

[31] 14 *Del. C.* § 1921.

[32] Pet.'s Op. Br., *passim*, D.I. 13.

[33] Pet.'s Ans. Br., at 10, D.I. 22.

[34] Resps.' Op. Br., *passim*, D.I. 17; Resps.' Ans. Br., *passim*, D.I. 20. The District argues that only funds currently possessed by the District are refundable. It claims that since it has long-spent 250 Executive's contributions and cannot disentangle it from other funds, that no reimbursement is owed. The facts of this case, plus the fungibility of money, make these arguments unconvincing. *See* Resps.' Op. Br. 5, at 7–9, D.I. 17.

6

mistaken assessment for over a decade, the District claims that 250 Executive should be the entity that bears that burden.[35]

The parties also sparred over whether *McGinnes v. Dep't of Finance*'s[36] or *CSDCPC 920 French v. Christina Sch. Dist.*'s ("*920 French II*")[37] interpretation of the statute governs. *McGinnes* is a Court of Chancery case that interpreted the Refund Statute in the context of school tax rates.[38] *920 French* focused on determining whether the Refund Statute itself is lawful and constitutional.[39] 250 Executive characterizes *920 French* as "bad law" and contends the Court there "did not correctly interpret *McGinnes* or § 1921."[40] The District replies that *920 French* remains on-point precedent that establishes that the Refund Statute is discretionary in nature.[41]

## IV.   STANDARD OF REVIEW

When reviewing a Motion for Summary Judgment, the movant bears the initial burden of showing that the undisputed facts support its claims or defenses.[42] If that burden is met, the burden shifts to the non-movant to show

---

[35] Resps.' Rep. Br., at 6–7, D.I. 25.
[36] 377 A.2d 16 (Del. Ch. 1977).
[37] 2019 WL 6170851 (Del. Super. Ct. Nov. 19, 2019).
[38] *McGinnes*, 377 A.2d at 16.
[39] 2019 WL 6170851.
[40] Pet. Op. Br., at 12–13, D.I. 13.
[41] Resps.' Ans. Br., at 5–8, D.I. 20.
[42] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

7

that "there is a genuine issue for trial."[43]  Summary judgment is appropriate when, after reviewing the evidence "in the light most favorable to the non-moving party," the Court finds that there is no issue of material fact.[44] Summary judgment is inappropriate when "there is a dispute as to a material fact or the inferences to be drawn therefrom."[45]

The above standard also applies to determinations of summary judgment on a request for declaratory judgment[46] and to cross-motions.[47] When, as here, cross-motions are filed and neither party claims there to be a genuine issue of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[48]

---

[43] Del. Super. Ct. Civ. R. 56(e); *see, e.g.*, *Moore*, 405 A.2d 680–81.  When deciding whether there is a genuine issue of material fact, the Court must "identify disputed factual issues whose resolution is necessary to decide the case, but not […] decide such issues." *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992) (citing *U.S. v. Diebold, Inc.* 369 U.S. 654 (1962)).

[44] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (citations omitted).

[45] *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970).

[46] "The standard for granting summary judgment on a request for a declaratory judgment is the same as for any other type of relief." *Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Mktg. Bd.*, 298 F.3d 201, n. 12 (3d Cir. 2002) (citing Fed. R. Civ. P. 57; *Simler v. Conner,* 372 U.S. 221, 222 (1963)).

[47] *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *5 (Del. Super. Ct. Jan. 31, 2019).

[48] Del. Super. Civ. R. 56(h).  *See also United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997) ("[T]he existence of cross

8

# V. DISCUSSION

At argument in the Court of Chancery, the Vice Chancellor observed concerning the District's refusal to submit 250 Executive's refund request to the receiver of taxes that:

> …this situation just seems so bizarre to me. I mean, it's like I went into a store and accidentally paid, you know, twice the price. And I've got all the documentation. And I go back in and the store says to me, "Well, no, you handed over twice the price, and we've got other reasons why we really need the money. Our other businesses haven't been doing so well. And so we're just keeping your overpayment.
>
> \*        \*        \*
>
> I don't get this one. It seems so clear cut that they were just using the wrong valuation. How the school gets to essentially say or the district gets to essentially say, "Yeah, we overcharged you, but we're keeping it," just help me understand that.[49]

Just so. The District's decision to keep the overpayment is in derogation of the Refund Statute. If its interpretation of the statute were correct and it were able to retain a taxpayer's erroneous overpayment in its sole, unrestrained

---

motions for summary judgment does not act *per se* as a concession that there is an absence of factual issues") (internal citations omitted)).

[49] Tr. Hrg. (Feb. 14, 2022), at 24:21-25:5; 25:9-13, *250 Exec., LLC v. Christina Sch. Dist,* C.A. No. 2021-0411-JTL. To be clear, the Vice-Chancellor's comment was merely an observation, not controlling authority.

discretion, without regard to the legitimacy of the request for repayment, and do so in all cases, simply because it perceived it needed the money more than the taxpayer, then the statute would become meaningless and taxpayers would be left without recourse. In practice, indeed, the statute has become meaningless and taxpayers are without recourse because, by denying every single request, the District has effectively repealed § 1921 in the Christina School District. Here, the District was never entitled to the money and it cannot keep it.[50]

The Court turns to the timing of 250 Executive's request. In several other jurisdictions, a refund request of a decade's old overpayment would be time barred.[51] The Refund Statute has no time-limiting language. Moreover, 250 Executive did not delay once it discovered the County's mistake in

---

[50] Where, as here, a school district receives funds paid a tax payment "under the erroneous or mistaken belief that it was owing, and it refuses to refund," the Court of Chancery found "it would be a travesty upon justice to deny the one justly entitled thereto the right to recover." *McGinnes*, 377 A.2d at 20 (quoting *Lincoln Nat. Life Ins. Co. v. Fischer*, 17 N.W. 2d 273 (Iowa 1944)).

[51] *E.g.*, ARK. CODE ANN. §26-35-901(a)(2) (West 2017) (filing must be done within three years of payment); COLO. REV. STAT. ANN. § 39-10-114(1)(a)(I)(A)(West 2021) ("a petition for abatement or refund [must be] filed within two years after January 1 of the year following the year in which the taxes were levied"); OHIO REV. CODE ANN. § 2723.01 (West 1953) (recovery action must be brought within a year of taxation or collection of assessments).

assessing its property. So, all of 250 Executive's $69,244.52 overpayment is potentially refundable.

While the legislative intent of the statute is clear – to provide reimbursement to taxpayers who erroneously or mistakenly overpay their school taxes – the process for obtaining that reimbursement arguably is less so. First, the statute declares that erroneously or mistakenly paid school taxes "may" be refunded by the recipient school district.[52] Then, it sets out what the requesting taxpayer must file and with whom – the refund request "shall" be filed with the school board under oath or affirmation stating the payment of taxes, by whom the taxes were paid, the date, the date of payment, and why the taxpayer believes the taxes were paid in error.[53] The school board then "shall" submit the request for refund to the receiver of taxes for the receiver's "approval."[54] The school board "shall" make no refund unless the receiver of taxes "approves" the refund in writing.[55]

For 250 Executive, the issue before the Court, as set out in its motion for summary judgment, is whether the Refund Statute required the District to submit its refund request to the receiver of taxes.[56] The District posits two

---

[52] 14 *Del. C.* § 1921.
[53] 14 *Del. C.* § 1921(1).
[54] 14 *Del. C.* § 1921(2).
[55] *Id.*
[56] Pet.'s Op. Br. at 6, D.I. 13.

11

issues in its summary judgment motion – whether it complied with the Refund Statute by exercising its discretion in denying 250 Executive's refund request and whether that denial was justified.[57]

Integral to the resolution of the issues raised by the parties is the question of who decides whether to approve or deny the request. Citing the mandatory "shall" language of §§ 1921(1) and (2) and *McGinnes,* 250 Executive argues it is the receiver of taxes. Citing the permissive "may" in the opening sentence of § 1921 and *920 French,* the District argues it is the District. Unfortunately, neither *McGinnes*, nor *920 French* directly answer that question.

In *McGinnes*, the plaintiff, a citizen, and taxpayer owning property in the Conrad School District brought suit alleging that the Conrad School Board had established a tax rate that exceeded that permitted by law.[58] McGinnes relied on the Refund Statute to argue that the Conrad School District must refund the excess amount he had paid above the legal amount.[59] The defendants contended that the taxes McGinnes sought to recover were not paid "through error or mistake."[60] Thus, the Court of Chancery assessed the

---

[57] Resps.' Op. Br., at 4, D.I. 17.
[58] *McGinnes,* 377 A.2d at 18.
[59] *Id.* at 19.
[60] *Id.*

meaning of those terms, found them to have their ordinary meaning, found them applicable to actions taken by both the taxpayer and the school board, and concluded that McGinnes could seek relief under the Refund Statute.[61] On reargument, the Chancellor concluded that, under § 1921(2), "the fact that approval of the receiver of taxes must be granted to a taxpayer's request, insofar as the former is in possession of funds of the taxpayer in an amount in excess of that authorized by the applicable statute, does not bar a taxpayer from use of the statute."[62] The court in *McGinnes* was not asked to decide whether the school board or the receiver of taxes determines if a refund should be made.

In *920 French I,* the plaintiff, a tax exempt charitable organization, submitted a request to the Christina School District for a refund of school taxes it had paid while litigating its exempt status with New Castle County.[63] Ultimately the County granted 920 French an exemption.[64] When 920 French sought a refund from the school district, the school board considered the request in closed executive session after limiting 920 French's lawyer to two

---

[61] *Id.* at 19-21.
[62] *Id.* at 21-22.
[63] *CSDCPC 920 French, LLC v. Christina Sch. Dist., et al.,* 2019 WL 183518 (Del. Super. Ct. Jan. 14, 2019). ("*920 French I*")
[64] *Id.* at *1.

minutes of oral presentation.[65]   The school board unanimously voted to deny the request in open session, without stating its reasons either orally or in writing.[66]  The school district argued in *920 French I* that the taxes were paid voluntarily and, thus, there was no "error" or "mistake" that would entitle 920 French to a refund.[67]  The court remanded the matter to the school district for a determination of 920's entitlement to a refund.[68]

The matter was back before the court on remand in *920 French II* after the school district again denied 920 French's request for a refund.[69]  When the matter was returned to it, the school board conducted a hearing on 920 French's refund request.[70]  The school board had before it a memorandum prepared by the board's chief financial officer which provided background information on 920 French and its application, together with an overview of how taxes generally are distributed to the school district and incorporated into its budget.[71]  The memorandum explained that it was impossible to trace how 920 French's tax dollars were used by the district.[72]  It also informed the

---

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *CSDCPC 920 French, LLC v. Christiana School District, et al.*, 2019 WL 6170851 (Del. Super. Ct. Nov. 19, 2019). ("*920 French II*").

[70] *Id.* at *2.

[71] *Id.*

[72] *Id.*

14

school board that it previously had denied a refund to every other applicant.[73] The hearing was public and on the record, lasting 34 minutes, with the transcript showing active participation by the school board members.[74] Two days after the hearing, the school board's secretary sent 920 French's attorney a letter explaining that the school board discussed the request in executive session and reconvened in public to deny the application by a vote of 4-2.[75]

On remand 920 French argued that the Refund Statute itself and the school board's denial of its refund request were unconstitutional. It set out three reasons: (1) the school board committed an unlawful taking pursuant to Article I, Section 8 of the Delaware Constitution[76] and the Fifth Amendment of the United States Constitution; (2) the Refund Statute violates Article VIII, Sections 1, 10(a), and 11(a) of the Delaware Constitution;[77] and (3) the school board deprived 920 French of its due process rights in violation of the United States Constitution.[78]

Only the third argument addressed the procedural requirements of the Refund Statute, but in the context of a constitutional due process violation

---

[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] Article VIII of the Delaware Constitution requires that "[a]ll taxes shall be uniform upon the same class of subjects…"
[77] *Id.*
[78] *920 French II,* at *3.

claim.[79]  Nevertheless, the arguments on that point mirror the arguments here. 920 French contended that the Refund Statute mandated that the school board submit the request to the receiver of taxes while the school board maintained that the Refund Statute required the school board submit the request only if it first approved the refund.[80]  The court determined that the school board was not required to submit the request to the receiver of taxes because, citing *McGinnes,* in 920 French's case, "the receiver of taxes was not in possession of any funds of the taxpayer in excess of that authorized by the applicable statute."[81]  Ultimately, it concluded, "The Section 1921 procedure appears

---

[79] *Id.* at \*4.

[80] *Id.*

[81] *Id.* The court quoted *McGinnes* as follows: "'[T]he approval of the receiver of taxes must be granted to a taxpayer's request, insofar as the [receiver] is in possession of funds of the taxpayer in an amount in excess of that authorized by the applicable statute.'" *Id.* (quoting *McGinnes* at 21-22).  The full statement in *McGinnes* from which the foregoing is taken reads: "I conclude that the fact that the approval of the receiver of taxes must be granted to a taxpayer's request, insofar as the former is in possession of funds of the taxpayer in an amount in excess of that authorized by the applicable statute, does not bar a taxpayer from use of the statute.  Included within the purview of such statute are not only amounts paid as a result of an error or mistake of a taxpayer but also as a result of an assessment error on the part of the taxing authority." *McGinnes*, at 21-22.  This conclusion was in response to the defendants' argument that "…it is clear that Sec. 1921 is intended to apply only to mistakes of fact as to which only the receiver of taxes is qualified to examine and approve and not to cases in which judicial interpretation of the tax statute is necessary." *Id.* at 21.  Thus, the Court concludes that the quoted language from *McGinnes* was not intended to set out a condition precedent for submission of requests to the receiver of taxes that the receiver be in possession of the taxpayer's funds, but rather to establish that the requirement

16

unfair and arbitrary on its face and in actual practice. Nevertheless, there is no basis for the Court to find on this record that it is either unlawful or unconstitutional."[82]

Having considered all of the foregoing, the Court finds that the Refund Statute, while imperfectly constructed to be sure, at least implicitly vests the District with some discretion to approve or reject refund requests. That authority is not found in the permissive "may" in the first sentence, however. That language merely makes any refund to be paid by the District conditional upon it being approved. It does not identify the approving authority. Rather, the fact that refunds are to be paid by the District and detailed sworn requests are to be submitted to the district justifying the refund implicitly confers the District with some approval authority. It would make little sense for the District to serve as a mere pass-through for requests to the receiver of taxes. In that event, it would be simpler to eliminate the District entirely from the process and require requests to be submitted directly to the receiver of taxes.

_____

to submit requests to the receiver of taxes was not a bar to taxpayer relief. In any event, the language in McGinnes relied upon by the court in *920 French II* – "insofar as [the receiver of taxes] is in possession of funds of the taxpayer in excess of that authorized by the applicable statute" – is not found in the Refund Statute itself. Moreover, given that tax proceeds are fungible, it is not reasonable to require the receiver of taxes to be in actual possession of the *same* funds remitted by the taxpayer.
[82] *Id.* at 5.

17

While the Court holds that the Refund Statute imbues the District with the discretion to grant or reject refund requests, the manner in which the District purported to exercise its discretion reflects a misunderstanding of its role and contravenes the purpose of the statute. The Refund Statute was enacted to give taxpayers a *viable* avenue to seek justice by obtaining reimbursement for erroneous tax overpayments. The District's unabashed 100% denial rate as well as the absence of anything in the record indicating that the District considered the individual merits of 250 Executive's request are inconsistent with this purpose.[83] The District voted to deny 250 Executive's request even after the County unequivocally found that it erroneously overpaid its taxes, a finding that the District does not dispute in any serious way.[84]

If the District is vested with discretion, that discretion necessarily is circumscribed by a requirement that it be exercised reasonably by evaluating requests in good faith and making decisions based on their merits.[85]

---

[83] *See* Pet.'s Ans. Brief at 10, D.I. 22 (explaining how the District "improperly blocked Petitioner's only legal remedy to recover the money overpaid in taxes.") *Id.*

[84] Resolution No. 21-004, Ex. C, D.I. 5.

[85] *See, Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P.,* 1996 WL 560190 (Del. Ch. Sept. 25, 1996) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II,* at 5, n. 1, Del. Ch. No. 12449, Chandler, V.C. (July 28, 1992), *rev'd and remanded on other grounds,* ("'…the interpretation of the General Partner's "discretion" to mean its reasonable

"Discretion as applied to public officers means the power or right to act in an official capacity in a manner which appears to be just and proper under the circumstances."[86] The District abuses its discretion when its decision "'is based on clearly unreasonable or capricious grounds' or the decision 'exceeds the bounds of reason in view of the circumstances and had ignored recognized rules of law or practice so as to produce injustice.'"[87] Here the District denied an application in the proper form that clearly established that 250 Executive paid taxes mistakenly or erroneously. It did so without justification or explanation. The District cannot claim to be exercising discretion when it arbitrarily denies every request for a refund regardless of whether the taxes were paid mistakenly or erroneously, or whether the request was properly submitted. The Court finds that the District's decision to deny 250 Executive's refund request was "clearly unreasonable," "exceeds the bounds of reason in view of the circumstances," and "ignored recognized rules of law or practice so as to produce injustice."

---

discretion is consistent with the requirement that a person act in good faith when given the right to exercise discretion to determine whether a condition has occurred.' (citation omitted)."

[86] *Caras v. Delaware Liquor Com'n,* 90 A.2d 492, 494 (Del. Super. Ct 1952).

[87] *Tesla, Inc. v. Delaware Division of Motor Vehicles,* 2022 WL 4482222, at *6 (Del. Super. Ct. Sept, 23, 2022) (quoting *K-Mart, Inc. v. Bowles,* 1995 WL 269872, at *2 (Del. Super. Ct. Mar. 23, 1995)).

The Court holds that the District's discretionary role under the Refund Statute is limited to determining if the refund request contains all of the statutorily required information and if the taxpayer paid the taxes erroneously or mistakenly in the amount of the requested refund.[88]  Once the District determines that the request is complete and the taxes were paid in error, then it is mandated by the Refund Statute to submit the request to the receiver of taxes for the receiver's approval.

Here, once the County issued the Resolution, it was obvious that 250 Executive satisfied its burden of establishing an erroneous overpayment.[89] The District had no legitimate basis to deny the refund request.[90]  As a result, the District improperly failed to submit 250 Executive's request to the receiver of taxes for approval.

---

[88] The Court fully expects there to be situations, unlike here, where there is an issue as to whether the taxes were paid erroneously or mistakenly.  Other situations might arise where the taxpayer has failed to file a request for refund properly.  The Court does not intend to preclude the District from exercising its discretion in making factual determinations in those situations.

[89] Whether 250 Executive's request met the statutory submission requirements is not at issue.

[90] Further support 250 Executive's request, to the extent such support is necessary, comes from Vo-Tech, another school district that benefitted from the overpayment.  250 Executive sent both districts similar same letters with the Resolution attached.  Vo-Tech rightfully refunded 250 Executive's overpayment.  The fact that Vo-Tech received significantly less than the District does not change the fact that the money was not owed and should have been refunded.

In its opinion, the court in *920 French II* acknowledged the public policy concerns that case presented.[91] Specifically, that court noted the unfairness when a taxpayer makes a good faith payment, is later deemed to have never owed the taxes, and is denied a refund.[92] It also noted the chronic underfunding of the school district.[93] The District offers public policy arguments in support of its efforts to justify its retention of the funds here as well: "It is not 'unreasonable' for that loss to be borne by the party who failed to recognize a mistaken assessment of its own property for thirteen years (250 Executive) rather than the party who spent those funds educating children and could not have prevented the payment of the disputed taxes." [94]

Ultimately, the Court is unpersuaded that it should base its decision on public policy considerations. While the *920 French* court noted the public policy concerns that case presented, those concerns were not the basis for its ruling. More importantly, though, the competing interests of taxpayers and school districts are better balanced legislatively. The Court is ill equipped to weigh those interests, especially on the limited record before it here.[95] Finally,

---

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] Resps.' Reply Br., at 6, D.I. 25. *Id.*

[95] The Court has not been presented with evidence of the relative burdens the parties would bear if required to sustain the loss. The District argues that it "has spent those funds educating children." To the extent that statement is

21

the District's public policy arguments cannot overcome the fact that "[a]ny disruptive effect of the judgment[] … on defendant['s] financial affairs is irrelevant."[96]  The District benefited from funds to which it was not entitled, so "returning money mistakenly paid is not a loss."[97]  For those reasons, the Court bases its decision on the language and purpose of the Refund Statute, not public policy considerations.

## VI.  CONCLUSION

The Court finds that the Refund Statute gives the District the discretion to determine the merits of 250 Executive's refund request, but it does not give the District discretion to reject a properly filed, meritorious request.  Because 250 Executive's refund request was properly filed and meritorious, it follows that the District improperly exercised its discretion in denying the request.  The District further acted improperly when it failed to submit the application to the receiver of taxes.

---

true, it is true in every case.  The Court assumes that the District has a budget of multiple millions of dollars.  The Court also assumes that there are a number of budget line items that include discretionary spending.  There is no evidence before the Court as to how the claimed refund of nearly $70,000 might be allocated across those line items so as to minimize any effect on "educating children."  Similarly, the Court has no information about how burdensome the loss is to 250 Executive.

[96] *McGinnes*, 377 A.2d at 22.

[97] Pet.'s Rep. Br., at 5, D.I. 27.

22

The Court considered remanding the matter to allow the District to reconsider its original denial of 250 Executive's request, but it rejects that option. The record clearly establishes that 250 Executive mistakenly or erroneously paid the taxes and followed the proper procedures for requesting a refund. Moreover, the District has offered no substantive evidence or argument to the contrary. Therefore, remanding the matter for the purpose of determining the merits of the request would serve no purpose.

In addition to asking the Court to issue a declaratory judgment requiring the District to submit its refund request to the receiver of taxes, 250 Executive asks the Court to award it damages plus pre-and post-judgment interest and attorney fees and costs.[98] The Court declines the latter request at this time. Instead, it believes the preferable course is to allow the entire process the Refund Statute contemplates to occur before entering a Final Order of Judgment.

**THEREFORE**, 250 Executive, LLC's Motion for Summary Judgment is **GRANTED.** The Cross Motion for Summary Judgment of Christina School District and Christina School District Board of Education is **DENIED**. The matter is **REMANDED** to the Christina School District Board of

---

[98] Pet.'s Op. Br., at 18-19, D.I. 13.

Education for submission of 250 Executive, LLC's refund request to the receiver of taxes in accordance with this Opinion.

In the event the receiver of taxes approves the refund request, 250 Executive, LLC may submit a proposed Final Order of Judgment.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.