# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CONSOLIDATED, LLC , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No N22C-06-084 CEB |
| | ) | |
| GFP CEMENT CONTRACTORS, LLC | ) | |
| and ATLANTIC STATES INSURANCE | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |

Submitted: April 20, 2023
Decided: May 15, 2023

*Upon Consideration of Plaintiff Consolidated, LLC's Motion for Partial Summary Judgment Against Defendant GFP Cement Contractors, LLC*
**GRANTED.**

## MEMORANDUM OPINION

Kevin S. Mann, Esquire, and Christopher P. Simon, Esquire, CROSS & SIMON, LLC, Wilmington Delaware. *Attorneys for Plaintiff Consolidated, LLC.*

Krista M. Reale, Esquire, and Tara D. McManamy, Esquire, MARGOLIS EDELSTEIN, Wilmington, Delaware. *Attorneys for Defendant GFP Cement Contractors, LLC.*

**BUTLER, R.J.**

Plaintiff Consolidated, LLC ("Consolidated") is a general contractor. Consolidated contracted with Defendant GFP Cement Contractors, LLC ("GFP") to provide finished concrete products to a construction site. GFP in turn contracted with Commercial Ready Mix Products, Inc. ("CRMP"), to provide wet concrete to the site. During a delivery, a concrete mixing truck operated by CRMP rolled over and destroyed property belonging to the Owner. The Owner collected its damages from Consolidated and Consolidated brought this action to collect from its contractor.

Consolidated claims GFP breached the indemnity clause of its contract by refusing to reimburse Consolidated the expenses incurred from this incident. GFP argues that: (1) it is not liable for indemnification under its contract with Consolidated; (2) the contract is ambiguous; and (3) Consolidated's claimed damages should be subject to discovery. The Court concludes GFP is liable under the contract and GFP has not made a case for taking discovery on damages. Accordingly, Consolidated's motion for partial summary judgment is **GRANTED.**

## BACKGROUND

### A. The Parties

Consolidated is a general contractor in the business of industrial construction.[1] It regularly contracts with others to provide services and materials to its industrial

---

[1] Compl. ¶ 5, D.I. 1 [hereinafter "Compl."].

1

projects.[2]  GFP is a contractor in the business of supplying and installing finished cement products to construction sites.[3]  It regularly contracts with general contractors, like Consolidated, and with subcontractors to provide wet cement to its projects.[4]

## B. The Master Services Agreement

In January 2017, Consolidated and GFP entered into a master services agreement (the "MSA").  Under the MSA,  GFP agreed to provide finished concrete to Consolidated's current and future projects.[5]  GFP agreed to "be responsible for any damage to [Consolidated] or Client equipment or property, or any privately owned equipment and property, due to [GFP's] operations."[6]  The MSA also contains an indemnity clause stating that "Seller"[7] agrees to indemnify and hold Consolidated harmless:

> from and against any and all damages, claims, fines, assessments, liabilities, losses, costs, and expenses (including reasonable attorneys' and experts' fees and litigation costs), arising out of, relating to, or resulting in any way from any injury or death to any person, damage to

---

[2] *Id.*
[3] *Id.* ¶ 6.
[4] *Id.*
[5] Ex. A to Compl. [hereinafter "MSA"].
[6] *Id.* § K(1).
[7] The term "Seller," in context, clearly refers to GFP, but GFP claims this term is ambiguous, mandating denial of Plaintiff's motion.  *See infra* Analysis § A(2).

any property, or any other damage or loss that results or is claimed to result in whole or in part from any actual of[8] alleged:

. . .

5. Any other act or omission of SubContractor, its directors, officers, *employees*, agents, *or contractors*.[9]

Under a separate term, all provisions of the MSA apply to subcontractors of GFP "as if they were employees" of GFP.[10]

GFP was also required to obtain, pay for, and maintain a policy of insurance naming Consolidated as an additional insured, and covering Consolidated for any loss incurred related to GFP's services.[11] GFP provided a certificate of insurance as required, and Consolidated says it relied on that insurance when permitting GFP to perform services at the project site.[12]

## C. The South Hill Terminal Incident

In March 2022, Consolidated entered into a contract with Kinder Morgan Liquids Terminals LLC ("KMLT") to provide industrial construction services at a location known as the South Hill Terminal in Chesapeake, Virginia.[13] As a

---

[8] The term "of" instead of "or" is clearly a typographical error, but GFP claims it renders the contract ambiguous, requiring denial of Plaintiff's motion. *See infra* Analysis § A(2).

[9] MSA § M (emphasis added).

[10] *Id.* § L.

[11] *Id.* § D.

[12] Ex. B to Compl.

[13] Compl. ¶ 7.

subcontractor of Consolidated, GFP was to provide finished concrete products to the South Hill Terminal.[14]  To accomplish this, GFP subcontracted with a third-party, CRMP, to provide wet, ready-to-pour concrete at the job site.[15]

On March 25, 2022, while delivering ready-to-pour concrete to the South Hill Terminal, a concrete mixing truck operated by CRMP rolled over and destroyed property belonging to KMLT at the South Hill Terminal.[16] As a result of the damage, KMLT demanded that Consolidated reimburse its losses in the amount of $160,131.86.[17]  This amount was "back-charged" against amounts KMLT owed Consolidated, thus forcing Consolidated to make good on KMLT's loss.[18] Consolidated then demanded that GFP indemnify it for its loss under the terms of the MSA.  GFP refused.

## D. This Litigation

Consolidated sued GFP alleging: (1) breach of contract for refusing to indemnify Consolidated for its losses under the MSA ("Count I"); and (2) negligence ("Count IV").[19]  Consolidated now moves for partial summary judgment as to Count

---

[14] *Id.* ¶ 8.
[15] *Id.* ¶ 12.
[16] *Id.* ¶ 13.
[17] *Id.*
[18] Compl. ¶ 13.
[19] Two claims—Count II and Count III—were brought against Atlantic States Insurance Company, the primary insurer for GFP's general liability, but are not relevant to the Court's decision here.

I, seeking reimbursement for the payment it made to KMLT. GFP contends that: (1) it is not liable for indemnification under the MSA; (2) the contract is ambiguous; and (3) damages should be subject to discovery.

## STANDARD OF REVIEW

The Court will grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[20] In considering a motion for summary judgment, the Court construes the record in the light most favorable to the non-movant.[21] The movant bears the initial burden of demonstrating "clearly the absence of any genuine issue of fact."[22] If that burden is met, then the non-movant must offer "some evidence" of a material factual issue.[23] "If the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment."[24] Conversely, summary judgment is inappropriate "if there is any reasonable hypothesis by which the opposing party may recover, or if there is a dispute as to a material fact or the inferences to be drawn therefrom."[25]

---

[20] Super. Ct. Civ. R. 56(c).
[21] *E.g.*, *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).
[22] *Brown v. Ocean Drilling & Expl. Co.*, 403 A.2d 1114, 1115 (Del. 1979).
[23] *Phillips v. Del. Power & Light Co.*, 216 A.2d 281, 285 (Del. 1966).
[24] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[25] *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970).

ANALYSIS

**A. GFP breached the MSA by refusing to indemnify Consolidated against damages caused by CRMP.**

To determine whether GFP breached the MSA, the Court must engage in contract interpretation.  The principles of contract interpretation are well-established and grounded on the parties' objective intent at the time of contracting as expressed by the plain language contained within the four corners of their agreement.[26]  The Court accords a contract's "clear and unambiguous terms . . . their ordinary meaning."[27]  "If a writing is plain and clear on its face, i.e., its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent."[28]

"Absent some ambiguity, Delaware courts will not destroy or twist [contract] language under the guise of construing it."[29]  Ambiguity exists only if a contract term "is fairly or reasonably susceptible of more than one meaning."[30]  "It is not the

---

[26] *E.g.*, *Fletcher v. Feutz*, 246 A.3d 540, 555 (Del. 2021).

[27] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 696 (Del. 2019) (internal quotation marks omitted).

[28] *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

[29] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

[30] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).

court's role to rewrite the contract . . . [or] allocat[e] the risk of an agreement after the fact . . . ."[31]

To obtain summary judgment, the movant's contract interpretation must be the only reasonable one.[32] A contract interpretation is reasonable when the contract is "read in full and situated in the commercial context between the parties."[33] "[I]t is not the job of a court to relieve . . . parties of the burdens of contracts they wish they had drafted differently but in fact did not."[34]

Under the MSA's plain language, GFP must indemnify Consolidated for the damage at the South Hill Terminal .

### 1. GFP is liable for the actions of CRMP as if it was GFP's own employee.

All provisions of the MSA apply to "other Subcontractors and his employees as if they were employees of the SubContractor."[35] "SubContractor" with a capital "C" denotes GFP, but "Subcontractor" with a lowercase "c" is not defined.[36] GFP contends CRMP does not qualify as a subcontractor within the meaning of the

---

[31] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 624 (Del. Ch. 2005), *rev'd in part on other grounds*, 901 A.2d 106 (Del. 2006).

[32] *E.g.*, *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783–84 (Del. 2012) (internal quotation marks omitted).

[33] *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 926–27 (Del. 2017); *accord OptiNose AS v. Currax Pharms., LLC*, 264 A.3d 629, 638 (Del. 2021).

[34] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006).

[35] MSA § L.

[36] *Id.* § A.

contract because its role was that of material supplier. But "[u]nder well-settled law," the Court may use dictionaries to ascertain the meaning of undefined contract terms.[37]

Black's Law Dictionary defines "subcontractor" as "[s]omeone who is awarded a portion of an existing contract by a contractor, [especially] a general contractor."[38] Put differently, a subcontractor is someone who is "contract[ed] to perform part or all of another's contract"[39] or "provide[s] some service *or material* necessary for the performance of another's contract."[40]

Ordinary terms are construed by their ordinary meaning unless some alternate definition prevails in the relevant industry.[41] There is no evidence that "subcontractor" is defined differently in the construction industry.[42] So "subcontractor" as used in the MSA is just that: ordinary.

GFP argues that "a subcontractor provides services, not goods" like the wet concrete for which GFP contracted with CRMP.[43] This argument attempts to

---

[37] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006).

[38] *Subcontractor, Black's Law Dictionary* (11th ed. 2019).

[39] *Subcontractor*, Merriam-webster.com (online ed.), https://www.merriam-webster.com/dictionary/subcontractor (last visited Mar. 6, 2023).

[40] *Subcontractor*, Dictionary.com (online ed.), https://www.dictionary.com/browse/subcontractor (last visited Mar. 6, 2023).

[41] *USA Cable v. World Wrestling Fed'n Ent., Inc.*, 766 A.2d 462, 474 (Del. 2000).

[42] *See generally, e.g., Types of Subcontractors in Construction*, Levelset, https://www.levelset.com/blog/types-of-subcontractors-in-construction/ (last visited Mar. 7, 2023).

[43] Def.'s Opp'n to Pl.'s Mot. for Summ. J. ¶ 7, D.I. 34 [hereinafter "Def.'s Opp'n"].

complicate an uncomplicated term. Consolidated contracted with GFP to provide finished concrete products and GFP subcontracted with CRMP to provide wet concrete to the South Hill Terminal for production of those products. Supplying the wet cement was a subcontract of the contract to provide finished cement products. Even if we call CRMP a material supplier, CRMP was *delivering* the wet concrete to the South Hill Terminal. Delivery is a service, which, even according to GFP's argument, is something subcontractors do. GFP's argument thus gets it nowhere: it is liable for the acts of CRMP as if it were GFP's own employee.

### 2. GFP is liable for "any and all" damages, losses, costs, and expenses "arising out of" "damage to any property" at the South Hill Terminal resulting from any actual or alleged act of GFP or "its employees, agents, or contractors."

The Court turns to the indemnification clause of the MSA. Consolidated claims its right to indemnification is clear. GFP counters that summary judgment is inappropriate because the indemnification provision is ambiguous.

The indemnification provision begins by stating, "Seller agrees to indemnify and hold harmless Contractor. . . ."[44] "Contractor" denotes Consolidated, but, because "Seller" is an undefined term, GFP argues there is ambiguity as to the term "Seller."[45] Reading the MSA as a whole, "Seller" clearly refers to GFP—the "seller" of the finished product services that is the subject matter of the MSA. Indeed, GFP

---

[44] MSA § M.
[45] *Id.* § A.

does not suggest some other party as the "Seller" in the agreement. This was a bilateral contract between GFP and Consolidated. The buyer of the services was Consolidated and the seller was GFP. The suggestion by GFP that some unknown mystery "seller"—unidentified by GFP or anyone else—stepped in just to provide indemnification to Consolidated is unreasonable.

The indemnification extends to any "actual *of* alleged acts" of GFP.[46] GFP says "actual of alleged acts" also renders the MSA ambiguous and, thus, summary judgment is inappropriate.[47] But the Delaware Supreme Court has held that "[c]ourts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty."[48] The test is what a reasonable person in the position of the parties would have thought the contract meant.[49]

"Actual of alleged acts" is nonsense. "Actual or alleged acts" is a phrase well known in the law, familiar to even first-year contracts students. "Of" is clearly a typo of "or" and the clause was indemnification of "actual or alleged acts."[50] Indeed, GFP does not urge any alternate construction, but rather argues that a typo should defeat summary judgment. For all the reasons applicable to "Seller," this argument likewise fails.

---

[46] *Id.* § M.
[47] Def.'s Opp'n ¶ 5.
[48] *Rhone-Poulenc Basic Chems. Co.,* 616 A.2d at 1196.
[49] *Id.*
[50] MSA § M.

10

### 3. GFP's liability does not depend on its control over CRMP.

GFP argues that it should not be liable for the negligence of CRMP or its employees because it did not retain active control over the manner and method with which CRMP's work was carried out. GFP points to *O'Connor v. Diamond State Telephone Co.*[51] to support this proposition. In *O'Connor*, a lineman, employed by an independent contractor, sued a telephone company and a cable communications company for injuries sustained when he fell from a pole covered with vegetation. The plaintiff alleged that the defendants breached their duty to provide him with a safe place to work.

The Court granted summary judgment for the defendants, holding that they owed no duty to the lineman as a matter of tort law.[52] This case, however, is not one of duty or negligence; the claim is for breach of contract. GFP is liable for CRMP's acts as if CRMP was an employee of GFP.[53] And indemnification is mandated for any actual or alleged "act or omission of [GFP], its directors, officers, *employees*, agents, or *contractors*."[54] Indemnity is not conditioned on whether there was an element of control. The attempt to gin up a control issue between GFP and CRMP is just that: an irrelevancy under the MSA.

---

[51] 503 A.2d 661 (Del. 1985).
[52] *Id.* at 663.
[53] MSA § L.
[54] *Id.* § M (emphasis added).

11

Under the MSA, GFP must indemnify Consolidated for all damage, costs, or losses at the South Hill Terminal caused by GFP or its contractors. That indemnity clause was triggered when KMLT back charged Consolidated for the damages caused by CRMP's truck. Accordingly, GFP owes Consolidated the indemnification it contractually agreed to.[55]

## B. Consolidated has provided sufficient evidence upon which to base its damage calculation for purposes of summary judgment.

GFP complains that "what damages were incurred and the amount of such damages" must be subject to discovery.[56] But Consolidated appended an affidavit to its motion[57] that included an invoice from KMLT showing that KMLT charged the remediation expense to Consolidated.[58] Notwithstanding the exhibit and affidavit, GFP claims there is a genuine issue for trial as to damages.

There is a heavy burned upon the movant in a motion for summary judgment. Indeed, the facts must be viewed in the manner most favorable to the respondent.[59] But the Court may not draw an inference for the respondent if the record is devoid

---

[55] GFP's argument about control is better suited for a claim against CRMP to recover the damages GFP now owes Consolidated.

[56] Def.'s Opp'n ¶ 14.

[57] Ex. A to Pl.'s Mot. for Summ. J., D.I. 24.

[58] Ex. A to Pl.'s Reply Br., D.I. 37.

[59] *E.g.*, *Merrill* 606 A.2d at 99.

12

of facts upon which the inference sought can be reasonably based.[60] The text of Rule

56(e) states:

> When a motion for summary judgment is made and supported. . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.[61]

Here, GFP makes a bare argument in its brief that damages discovery is

necessary without any supporting document, affidavit, or exhibit. [62] Absent a

countering affidavit, or any evidence at all that there is a genuine issue as to

damages, GFP has not made a case that there are facts in dispute concerning

damages.[63] Judgment will be entered accordingly.

---

[60] *See Yatco, M.D. v. Naticoke Mem'l Hosp., Inc.*, 2010 WL 2336866, at *4 (Del. Super. June 10, 2010).

[61] Super. Ct. Civ. R. 56(e).

[62] *Tanzer v. Int'l Gen. Indus., Inc.*, 402 A.2d 382, 385 (Del. Ch. 1979) ("A party opposing summary judgment, however, may not merely deny the factual allegations adduced by the movant. If the movant puts in the record facts which, if undenied, entitle him to summary judgment, the burden shifts to the defending party to dispute the facts by affidavit or proof of similar weight." (internal citation omitted)).

[63] At oral argument, GFP argued that discovery is necessary to determine the "cause" of the accident. But the "causation" in this case occurred when KMLT demanded— and received—payment from Consolidated. That "caused" the duty to indemnify. Consolidated has no burden to prove the bona fides of KMLT's back charge. Once returned to the status quo ante per the MSA, GFP may have rights against other parties, wherein causation of the accident may be germane. But those issues are well beyond the scope of this opinion, which is limited to the contract between the parties.

**CONCLUSION**

For the foregoing reasons, Consolidated's motion for partial summary judgment as to GFP's breach of contract claim is **GRANTED.**

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

14