# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| JENNIFER MARCOLINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-07-011 CEB |
| | ) | |
| HORIZON SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: November 30, 2022
Decided: January 5, 2023

## MEMORANDUM OPINION

*Upon Consideration of Plaintiff Jennifer Marcolini's Motion for Partial Summary Judgment on the Issue of Liability,*
**DENIED.**

*Upon Consideration of Defendant Horizon Services, Inc.'s Motion for Partial Summary Judgment on the Issue of Damages,*
**GRANTED.**

Jeffrey M. Weiner, Esquire, LAW OFFICES OF JEFFREY M. WEINER, ESQ. P.A, Wilmington, Delaware. *Attorney for Plaintiff.*

Michael C. Heyden, Jr., Esquire, GORDON REES SCULLY MANSUKHANI, LLP, Wilmington, Delaware. *Attorney for Defendant.*

**BUTLER, R.J.**

This is an action by a homeowner against Horizon Services over a repair job that did not go well. The parties have placed several issues before the Court that will be dealt with in this opinion.

## BACKGROUND

Plaintiff Jennifer Marcolini owns a house in Klair Estates, located in New Castle County.[1] She contacted Horizon Services on August 3, 2019, with a complaint that there a smell of fuel oil coming from the home heating oil tank in her basement.[2] Horizon sent a technician to the residence. The tech realized that the fuel filter was leaking and needed replacement, but he did not have the necessary part on his truck.[3] He either turned off the supply line to the oil tank or did not—a question the jury will have to answer—and left the premises.

Sometime later in the evening, Plaintiff contacted Horizon a second time. Horizon returned the call, but Plaintiff missed it and finally spoke to Horizon the following morning.[4] The complaint was that the smell of fuel oil had grown more powerful. A second technician arrived at about 3 p.m. with the necessary part and the filter was repaired.[5] Exactly who turned off the supply line and when, and how much fuel leaked out, why and when are all issues that are present in this case.

---

[1] Compl. ¶ 3, D.I. 1 [hereinafter "Compl."].
[2] *Id.* ¶ 4.
[3] *Id.* ¶ 5.
[4] *Id.* ¶ 6–8.
[5] Def.'s Mot. for Summ. J. ¶3, D.I. 40 [hereinafter "Def.'s Mot."].

It is certain, however, that fuel oil leaked out onto the basement floor and then into the drain lines, the sump pump and out onto the sump drainage area in the back yard.

The first effort at cleaning up the fuel was limited to the basement and painting a seal coat on the floor.[6] But that was only the first—there were several more,[7] including digging up the backyard dirt to rid it of the fuel oil contaminants. Fans and monitoring equipment were installed above and below the basement slab. Suffice it to say, this case involves quite the mess and a lot of cleanup involving multiple contractors and DNREC.

## PROCEDURAL HISTORY

Plaintiff filed her complaint and discovery proceeded apace. While Plaintiff's counsel has leveled various complaints concerning Horizon's responses to litigation discovery, these complaints do not affect the resolution of the issues before the Court.

Plaintiff has moved for summary judgment as to Horizon's liability.[8] Plaintiff feels that there is no question that Horizon was negligent in several ways and that the evidence is clear and unquestionable. Plaintiff would have the Court declare a liability verdict for the Plaintiff and move on to damages.

---

[6] Compl. ¶¶ 21, 23.
[7] *Id.* ¶¶ 28–32, 40–45, 48, 51–52.
[8] Pl.'s Mot. for Summ. J., D. I. 39 [hereinafter "Pl.'s Mot."].

Defendant, obviously, disagrees and has also moved for partial summary judgment.[9] Defendant asks the Court to preclude Plaintiff from: (1) proceeding to the jury on her punitive damage claim; (2) proving a diminution in value to her home for want of proof; and (3) a claim for attorneys' fees.[10]

## STANDARD OF REVIEW

The Court will grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11] In considering a motion for summary judgment, the Court construes the record in the light most favorable to the non-movant.[12] The movant bears the initial burden of demonstrating "clearly the absence of any genuine issue of fact."[13] If that burden is met, then the non-movant must offer "some evidence" of a material factual issue.[14] "If the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment."[15] Conversely, summary judgment is inappropriate "if there

---

[9] Def.'s Mot.

[10] Defendant also asked the Court to preclude Plaintiff from a claim for "pain and suffering." The Court will defer discussion and ruling on that issue until after the pretrial conference on January 6, 2023.

[11] Super. Ct. Civ. R. 56(c).

[12] *E.g.*, *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).

[13] *Brown v. Ocean Drilling & Expl. Co.*, 403 A.2d 1114, 1115 (Del. 1979).

[14] *Phillips v. Del. Power & Light Co.*, 216 A.2d 281, 285 (Del. 1966).

[15] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

is any reasonable hypothesis by which the opposing party may recover, or if there is a dispute as to a material fact or the inferences to be drawn therefrom."[16]

On summary judgment, the Court "cannot try issues of fact . . . but only is empowered to determine whether there are issues to be tried."[17] "[T]he function of the judge in passing on a motion for summary judgment is not to weigh evidence and to accept that which seems . . . to have the greater weight."[18] "The test is not whether the judge considering summary judgment is skeptical that [the non-movant] will ultimately prevail."[19]

"There is no 'right' to a summary judgment."[20] The Court may, in its discretion, deny summary judgment if it determines further factual development would clarify the law or its application.[21] Summary judgment also may be denied "even if its technical requirements seem to be met" if the Court finds "a trial record is necessary in the interests of justice."[22]

---

[16] *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970).
[17] *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012) (internal quotation marks omitted).
[18] *Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969).
[19] *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002).
[20] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002).
[21] *E.g., Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 918–19 (Del. 1965); *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962).
[22] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1024 (Del. Super. Ct. 2021) (internal quotation marks omitted).

# ANALYSIS

## A. Plaintiff's motion for summary judgment on the issue of liability must be denied because there are genuine issues of material fact.

Plaintiff believes that the record establishes to a certainty that the first technician to respond to the call for service left the fuel valve open, allowing fuel to pour onto the floor. There is support for Plaintiff's argument. But there is also support for the proposition that he closed the valve before he left.

A party moving for summary judgment must demonstrate first that there is no issue of material fact.[23] The question whether Horizon's employee left a valve open or closed is not resolved. This question is crucial to determining whether Horizon or its employees were negligent. A jury will make that determination, along with the other factual issues that remain in contention, at trial. Accordingly, Plaintiff's motion for summary judgment is denied.

## B. Defendant is entitled to summary judgment on the issues of punitive damages, diminution in value, and attorneys' fees.

Defendant asks the Court to preclude Plaintiff from: (1) proceeding to the jury on her punitive damage claim; (2) proving a diminution in value to her home for want of proof; and (3) a claim for attorneys' fees. The Court discusses and grants summary judgment for each issue in turn.

### 1. No reasonable jury could conclude that Defendant's conduct satisfies the threshold to consider punitive damages.

---

[23] *E.g.*, *Merrill*, 606 A.2d at 99.

Punitive damages are easy to allege in a complaint. And because a complaint must be read liberally, dismissing a punitive damage claim outright is a rarity. At the summary judgment stage, however, the parties have exchanged discovery, depositions have been taken, and they have a more complete record on which to make their arguments for the presence of a potential punitive damage claim.

Relying on some cases that have denied summary judgment on a punitive damage claim, Plaintiff says that punitive damages are a "fact question" and her entitlement to them should be left for the jury to decide.[24] This argument supposes that the issue of punitive damages can never be resolved pretrial and must always be presented to a jury. But issues about which there can be no reasonable dispute are not to be put to a jury and should be decided as a matter of law.[25]

---

[24] Plaintiff cites the following cases as support for her argument: *NVF v. Garrett Snuff Mills, Inc.* 2002 WL 130536, at *4 (Del. Super. Jan. 30, 2002); *Ruoff v. Dilks*, 2015 WL 5438698, at *2 (Del. Super. June 16, 2015); *Carney v. B&B Service Co.*, 2021 WL 1250474, at *3 (Del. Super. Apr. 5, 2021).

[25] *See, e.g., Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 527 (Del. 1987) ("However, where the evidence supports no such reasonable inference, the movant must be awarded a directed verdict or judgment as to punitive damages."); *Craig v. AAR Realty*, 576 A.2d 688, 697 (Del. Super. 1989) ("In this regard, as the trial judge, I must submit the issue to the jury where a reasonable inference justifying punitive damages can be drawn from the facts."); *Greenlee v. Imperial Homes Corp.* 1994 WL 465556, at *9 (Del. Super. July 19, 1994) ("When the Court construes the facts most favorable for the plaintiffs and the evidence permits no reasonable inference a defendant's conduct is sufficiently outrageous to warrant imposition of punitive damages, summary judgment on punitive damages is appropriate.").

The problem of leaving punitive damages claims to a jury to determine is illustrated by *Jardel Co., Inc. v. Hughes*,[26] which contains one of the most fulsome discussions of the degree of recklessness required to support punitive damages. *Jardel* was a case involving an employee in a shopping mall who was abducted and raped from the mall parking lot at the end of her shift. She sued the mall owners and operators, claiming it provided insufficient security to protect her as she walked to her car. The trial judge permitted the jury to consider the question of punitive damages and the jury did indeed assess them against the defendants.

Notwithstanding the trial judge's submission of the question of punitive damages to the jury as a "fact question" and notwithstanding the jury's agreement that punitive damages should be awarded, the Delaware Supreme Court reversed the award. According to the Court:

> There is an obvious incentive on the part of every landowner to maintain safe premises, since it is in his own economic interest to do so. It is difficult to envision any large saving to be realized by the failure to employ moderately paid security personnel. We fail to see how the allowance of punitive damages in this case will advance the cost-benefit equation in this area.[27]

Clearly, the question whether to submit punitive damages to the jury on grounds that they present a "fact question" belies the more basic policy issues that must be considered before doing so. Chief among these is whether a reasonable jury

---

[26] 523 A.2d 518 (Del. 1987).
[27] *Id.* at 531.

might conclude that the defendant's conduct was sufficiently "wanton" or "wilful" or "gross" as to warrant submitting the issue to the jury.

Here, the complaint alleges that Horizon "was not only negligent but grossly negligent in its attempt to repair the leak in the fuel filter."[28]   It is neither alleged, nor has the expanded record produced, any evidence that Horizon's technician acted out of some depraved indifference to Plaintiff's safety.  Nor can any such indifference be inferred from the surrounding circumstances.  There is no evidence the technician knew the Plaintiff or entertained some animus toward her.  If he failed to close a valve, that is all he is alleged to have done.

To make out a case for punitive damages, the record must show evidence from which a reasonable jury might find that the defendant's conduct was far beyond "ordinary" negligence.[29]  The record does not support this conclusion.  Moreover, as in *Jardel*, Horizon already has an economic disincentive to perform repair work in a negligent manner.  Not only does it result in costly clean-up, but it also damages the company's image and reputation.  Allowing punitive damages does not "advance the

---

[28] Complaint ¶ 63.

[29] *Jardel*, 523 A.2d at 530 ("In Delaware tort law the term "gross negligence" has little significance.  Simple negligence suffices for recovery of compensatory damages, and where reckless (wanton) or wilful conduct is required, either as a threshold for recovery, as in claims based on the premises guest statute or as a prerequisite for the recovery of punitive damages, as in this case, even gross negligence will not suffice.").

cost-benefit equation in this area."[30]  It is certainly possible that the negligence could be so egregious as to warrant submission to a jury, but this record is insufficient to support it.  Accordingly, Defendant's motion for summary judgment on punitive damages is granted.

## 2. Plaintiff's allegation of a diminution in the value of her home is speculative.

Horizon seeks partial summary judgment to the extent Plaintiff seeks to recover the difference in value of her home before the oil spill and after the oil spill.

Damages should be calculated such that they will place the plaintiff, "as nearly as possible, in the position the plaintiff would have occupied if the tort had not been committed."[31]  Diminution damages are generally considered when the cost of repairs is prohibitive, or so grossly disproportionate to the cost of repairs that diminution damages should be used to avoid economic waste.[32]  That does not

---

[30] *Id.* at 531.

[31] Restatement (Third) of Torts: Remedies, Appendix. Black Letter of Tentative Draft No. 1 (Am. L. Inst. 2022).

[32] *See, e.g., Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 2010 WL 1380252, at *5 (Del. Super. Apr. 8, 2010) ("[I]f the evidence demonstrates that the cost of restoration is unreasonable or disproportionate to the diminution in the value of the land caused by the loss, the cost of repair will be offset by depreciation."); *Leary v. Oswald*, 2006 WL 3587249, at *3 (Del. Super. Oct. 25, 2006) ("When there is a tremendous disparity between restoration (replacement) costs and the diminished value of the property, diminution in value may be an appropriate measure of damages."); *Farny v. Bestfield Builders, Inc.*, 391 A.2d 212, 213–14 (Del. Super. 1978) ("In instances where the costs of replacement are unreasonable or excessive in relation to the damage to the land itself, the Court will, in its discretion, allow the

appear to be the case here: the financial costs to repair are known and do not exceed the value of the land with improvements.

Nonetheless, Plaintiff argues that even when the repairs are fully completed and the consequences of the spill are no longer apparent at the property, there will be residual damages from the spill calculated as the difference in value between a property that has had an oil spill and a property that has not had an oil spill.[33] At least in the abstract, it is conceivable that a property that has had an oil spill would suffer some diminution in value. But that is only a guess—Plaintiff has not well articulated the point.

The problem here is that Plaintiff's "proof" of this diminished value comes in the form of a realtor's resale appraisal report of the type one might procure in setting a resale value on one's residence.[34] That report notes that there was a spill, and that the parties have an ongoing dispute about liability for it, but does not otherwise attribute any financial value to its consequence.[35] In other words, Plaintiff has no evidence as to what this diminution value of the property is. Defendant therefore seeks to exclude this argument as an element of damage.

jury to consider more than one measure of damage in order to permit flexibility and achieve a just and reasonable result.").

[33] Pl.'s Answer to Def.'s Mot. for Summ. J. at 27–29, D.I. 52 [hereinafter "Pl.'s Answer"].

[34] Ex. S to Pl.'s Answer.

[35] *Id.* at .pdf p. 3.

Plaintiff responds by arguing that Plaintiff herself can testify to this diminution in value, citing the "record owner rule."[36] This rule permits landowners to testify in as to their own belief in the value of their own property.[37] Because such testimony involves opinions, it has been challenged in light of Rule 701 of the Delaware Rules of Evidence, which limits opinion testimony to experts.[38] While intellectually suspect, one can certainly argue that landowners should not be precluded from making their arguments to the Court simply because they cannot afford an expert. But the record owner rule cannot be used as an excuse for a landowner to supply an expert opinion through the guise of their testimony as an owner.

Moreover, when the record owner rule has been permitted to allow lay testimony as to value, it has been to the present value, not future value or diminished value.[39] For example, *PJ King Enterprises, LLC v. Ruello*[40] was a suit over a land

---

[36] Pl.'s Answer at 28–29, D.I. 52.
[37] *PJ King Enters., LLC v. Ruello*, 2008 WL 4120040, at *2 (Del. Super. July 1, 2008).
[38] D.R.E 701.
[39] *See, e.g., PJ King*, 2008 WL 4120040 at *2 ("[T]he Court holds that lay witness testimony may not address diminution in value or economic or financial loss. This testimony requires special skill or knowledge that is not appropriate for the lay witness."); *Duncan v. STTCPL, LLC*, 2020 WL 829374, at *11 (Del. Super. Feb. 19, 2020) ("Moreover, '[i]f the owner's perceptions of property value are based on scientific or specialized knowledge or skill, then they will rise to the level of an expert witness and will not be permitted to testify without appropriate notice to the parties and Court.'" (citing *id.*)).
[40] 2008 WL 4120040 (Del. Super. July 1, 2008).

transaction in which the plaintiff discovered post-sale that his newly purchased property was located on protected wetlands. He sought to testify as the record owner to the difference in value between a property in a wetland and a property outside a wetland. The Court held that the Plaintiff could testify to his own opinion as to the present value of his land, but could not express an opinion on value that required extrapolation or manipulation of financial concepts.[41]

Here, the proposed testimony is far afield from an acceptable record owner testimony. The Plaintiff proposes to offer opinions about the future value of her property due to the stigmatizing effect of having had an oil spill that has since been remediated.[42] That such a diminution in value occurs is only theoretical: Plaintiff offers no particular expertise in real estate valuation or appraisals. Instead, she proposes to simply offer her personal opinion and invite the jury to speculate along with her. Doing so runs contrary to the whole point of Article VII of the Delaware Rules of Evidence, which is to eschew speculation and ground decisions on reliable opinions based on science and data.

The Court does not reach the question of whether the Plaintiff's property has suffered some abstract diminution in value because of the oil leakage. It does hold,

---

[41] Plaintiff attempts to distinguish *PJ King Enterprises* by citing to *Duncan*. The *Duncan* opinion, however, appears to reaffirm the *PJ King* case, holding that expert testimony would be necessary to establish remediation costs, limiting the availability of record owner testimony. *See Duncan,* 2008 WL 4120040, at *11.

[42] Pl.'s Answer at 29.

however, that the Plaintiff may not use the record owner rule or the bare opinions of the Plaintiff herself—a lay witness on a matter that requires expert testimony—to make that case. Plaintiff's opinion is speculative at most and far more likely to confuse than enlighten the jury. Accordingly, Defendant's motion for partial summary judgment on this issue is granted.

### 3. Attorneys' fees are not an element of damage under Delaware law.

Defendant has moved for partial summary judgment insofar as Plaintiff has included a claim for attorneys' fees in her Complaint.[43] Defendant correctly points to the fact that Delaware follows the "American Rule" that each party must bear their own legal fees unless a statute expressly controls otherwise.[44]

Plaintiff responds that attorneys' fees should be considered by the jury in assessing punitive damages.[45] It is telling that she cites no Delaware case that has held that legal fees should be considered by a jury in computing or assessing punitive damages. But more to the point, the Court has ruled that Defendant should get judgment on the punitive damages claim.[46] There is now no punitive damages claim upon which to pin a claim for attorneys' fees—even if that were an element to be considered in such a case. This is not a punitive damage case and even under

---

[43] Compl. at 15.

[44] *See, e.g., Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 545 (Del. 1998).

[45] Pl.'s Answer at 35–36.

[46] *See supra* Analysis § B(1).

Plaintiff's unprecedented reckoning, she has cannot recover attorneys' fees as part of her judgment. Summary judgment on this issue will be granted for the defense.

## CONCLUSION

For the foregoing reasons: (1) Plaintiff's motion for partial summary judgment on the issue of liability is **DENIED**; (2) Defendant's motion for partial summary judgment on the issues of punitive damages, diminution in value and attorneys' fees is **GRANTED.**

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge