**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| ALDRICH CAPITAL PARTNERS FUND, LP, AND RHYTHM MANAGEMENT GROUP CORP., | ) ) ) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 2023-1253-PRW |
| | ) |
| RHONDA BRAY, | ) |
| Defendant. | ) |

Submitted: April 10, 2025
Decided: July 10, 2025

*Upon Defendant's Motion to Strike,*
**GRANTED.**

*Upon Plaintiff's Motion for Partial Summary Judgment
and Final Judgment on Count II,*
**DENIED.**


**MEMORANDUM OPINION AND ORDER**


Margaret M. DiBianca, Esquire, DiBIANCA LAW, LLC, Wilmington, Delaware; Joseph P. Rockers, Esquire, Justin D. Ward, Esquire (*argued*), and Casey I. Wright, Esquire, GOODWIN PROCTER LLP, Boston, Massachusetts, *Attorneys for Plaintiffs Aldrich Capital Partners Fund, LP, and Rhythm Management Group Corp.*

Shannon E. German, Esquire (*argued*), and Jeremy W. Gagas, Esquire, WILSON SONSINI GOODRICH & ROSATI P.C., Wilmington, Delaware, *Attorneys for Defendant Rhonda Bray.*


**WALLACE, J.**

Aldrich Capital Partners Fund, LP, entered into a Stock Purchase Agreement ("SPA") with Rhonda Bray to purchase her shares in Rhythm Management Group Corp. As part of the SPA, Ms. Bray agreed to indemnify Aldrich for 50% of Rhythm's losses from the extant third-party Murj litigation.

The parties have divergent understandings of the SPA, and the intent of statements made when currently discussing the losses from the Murj litigation. Rhythm seeks to make Ms. Bray pay immediately, but Ms. Bray says that indemnity amounts are still in dispute and that Rhythm is improperly treating statements made during settlement negotiations as an admission of the amount she owes.

For the reasons explained now, Defendant's motion to strike all references to settlement communications is **GRANTED**, and Plaintiff's motions for partial summary judgment and final judgment are **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. THE PARTIES

Plaintiff Aldrich is a Delaware limited partnership with its principal place of business in Virginia. Plaintiff Rhythm is a Delaware corporation with its principal place of business in Maryland. Defendant Rhonda Bray is an individual who resides

---

[1] Any interested reader can obtain a fuller recounting of this case's history from the Court's earlier decision on Defendant's motion to dismiss. *Aldrich Capital Pr's Fund v. Bray*, 2024 WL 2272664, at *1-4 (Del. Ch. May 17, 2024).

in Maryland.[2]  Ms. Bray is the founder of Plaintiff Rhythm.[3]

## B. THE SPA AND THE MURJ LITIGATION

Ms. Bray sold her shares of Rhythm to Aldrich for $11 million via the SPA.[4] But a couple months prior, non-party Murj Inc. had filed a lawsuit against Rhythm alleging that Rhythm purloined Murj's intellectual property in breach of their license agreements (the "Murj Litigation").[5]

When Aldrich was alerted to the Murj Litigation during sale negotiations, Aldrich chose to bargain for Murj-specific contractual protections instead of walking away from the deal.[6]  SPA § 6.3(v) states that Aldrich has the right to be indemnified for losses resulting from "the Murj Litigation."[7]  Section 6.10(g) provides that the Murj-related losses:

> shall be first satisfied from: (i) the [$500,000] Special Indemnity Escrow Amount . . . (ii) for any Losses after the Special Indemnity Escrow Amount has been exhausted, up to $1,000,000 directly from the Company, (iii) thereafter, any further Losses to be shared equally by the Seller and the Company[.][8]

---

[2]   Complaint ("Compl.") ¶ 10-11 (D.I. 1).

[3]   Affidavit of Rhona Bray ¶ 1 (D.I. 45).

[4]   *See generally* Pl.'s Mot. for Partial Summ. J., Ex. A (the "SPA") (D.I. 36).

[5]   *See Murj, Inc. v. Rhythm Management Group, PLLC*, Case No. 5:21-cv-00072-EJD-SVK (N.D. Cal.) (the "Murj Litigation").

[6]   *See generally* Pl.'s Mot. for Partial Summ. J., Ex. K (the Indemnification Agreement).

[7]   SPA § 6.3(v).

[8]   SPA § 6.10(g).

And Section 6.9(b)(ii)(B) establishes that Ms. Bray's indemnity obligations for the Murj Litigation are capped at the "Secondary Consideration," which equals the $11 million Ms. Bray received under the SPA.[9]

### C. MS. BRAY'S ALLEGED FAILURE TO INDEMNIFY

Rhythm alleges that Ms. Bray hasn't lived up to her indemnity obligations under the SPA.[10]  In July 2023, Rhythm sent Ms. Bray a notice for over $1.5 million in legal fees from the Murj Litigation.[11]  When Rhythm and Aldrich filed this action in late 2023, their chief indemnity-related grievance was that Ms. Bray hadn't released the $500,000 Special Indemnity Escrow Amount.[12]  Now Rhythm acknowledges that Ms. Bray has since done so, which "mooted this part of Count II."[13]  But Rhythm raises the issue of prejudgment interest on the escrow amount due to the delay.[14]

---

[9]  SPA §§ 2.1(b), 6.9(b)(ii)(B).

[10]  Unlike the fraud claim in Count I, the breach-of-contract claim in Count II at issue here is brought by both Aldrich and Rhythm.  *See* Compl. ¶¶ 52-64.  But Plaintiffs are asking for judgment solely in Rhythm's favor in this motion. Pl.'s Mot. for Partial Summ. J. at 9 n.5 ("In the Complaint, Count II is pleaded on behalf of both Aldrich and Rhythm. (Compl. ¶¶ 58-64.) However, as permitted by the SPA, Aldrich has elected to require Seller to indemnify Rhythm directly (see Ex. B § 6.3), and Rhythm sent the relevant indemnification notices to Seller (see Exs. C, E, H (indemnification notices).) Thus, a judgment solely in Rhythm's favor is a complete and appropriate remedy.") (D.I. 36).

[11]  Pl.'s Mot. for Partial Summ. J., Ex. C.

[12]  Compl. ¶¶ 49-51.

[13]  D.I. 12.

[14]  Pl.'s Mot. for Partial Summ. J. at 12-14.

Rhythm also alleges that "Bray has further breached the SPA by failing to pay 50% of the losses in the Murj Litigation over $1 million." Compl. ¶ 63. That part of Count II hasn't gone away, but

## D. THIS LAWSUIT

This litigation began in October 2023 with a brief stint in Superior Court before it came to the Court of Chancery a few months later.[15] Thereafter, Ms. Bray moved to dismiss the Complaint.[16] That motion was denied.[17]

Now before the Court is Rhythm's motion for partial summary judgment and partial final judgment regarding its indemnity claim.[18] Ms. Bray opposes the motion and also moves to strike all communications that she believes are part of settlement discussions.[19]

## II. DISCUSSION

### A. MS. BRAY'S MOTION TO STRIKE THE PARTIES' PRIOR SETTLEMENT COMMUNICATIONS IS GRANTED.

#### 1. The Parties' Contentions for the Motion to Strike

Ms. Bray urges the Court to exclude her previous statements about her willingness to make partial payments via a payment plan; she says they are inadmissible as they were made as a part of settlement negotiations.[20]

---

it isn't at issue today.

[15] Compl. ¶ 14 n.1.

[16] D.I. 6.

[17] *Aldrich Cap. Partners Fund, LP v. Bray*, 2024 WL 2272664, at *8 (Del. Ch. May 17, 2024).

[18] D.I. 35.

[19] D.I. 45.

[20] Def.'s Opp'n and Mot. to Strike at 24-30 (D.I. 45).

According to Rhythm, the statements it relies upon were admissions of liability made outside of any settlement negotiations. As Rhythm tells it, the discussions then were only to determine what amounts were in dispute.[21]

### 2. Applicable Legal Standards for Ms. Bray's Motion to Strike

It is universally understood that statements made during settlement talks can't be used "for the purpose of proving or disproving liability with regard to the claim that is the subject of the settlement discussion."[22] Indeed, Rule 408 of the Delaware Rules of Evidence provides that "conduct or a statement made during compromise negotiations about the claim" is inadmissible "on behalf of any party either to prove or disprove the validity or amount of a disputed claim."[23] Of course, by its terms, the rule does require the challenged statements to have been made during compromise or settlement negotiations.[24]

---

[21] Pl.'s Reply at 15-17 (D.I. 49).

[22] *Grunstein v. Silva*, 2011 WL 378782, at *6 (Del. Ch. Jan. 31, 2011); *but see id.* (noting though that "[s]uch evidence may be admissible . . . if offered for another purpose"). *See also Paige Cap. Mgmt., LLC v. Lerner Master Fund, LLC*, 22 A.3d 710, 725-26 (Del. Ch. 2011) (discussing the contours and caselaw regarding this well-kenned prohibition).

[23] D.R.E. 408; *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1286 (Del. Ch. 2004), *aff'd*, 2005 WL 277918 (Del. Jan. 31, 2005) ("Rule 408 does not allow litigants 'to prove liability' for a claim or its amount with '[e]vidence of conduct or statements made in compromise negotiations' regarding that claim."); *OptimisCorp v. Waite*, 2015 WL 5147038, at *9 (Del. Ch. Aug. 26, 2015) ("By its terms, Rule 408 precludes admissions of offers of compromise for the purpose of proving the liability or amount of the claim actually being settled.").

[24] D.R.E. 408.

### 3. Motion to Strike—Analysis

While Rhythm tries mightily to cast them differently, the parties' communications they proffer were indeed made as part of settlement negotiations and, therefore, excluded. The Court does not find the fact that certain communications lacked a "settlement" header dispositive; the Court reviews them considering the content and context of the statements.[25]

The content and timing of the communications that Rhythm proffers prove that they were part of settlement negotiations. This action was already filed at the time of these communications, and they reference offers to pay and its impact on this litigation.[26] For example, one of the emails with an alleged admission reads: "If you agree, we'll circulate a stipulation of dismissal."[27] Such language, in context, clearly indicates that any statements offering payment were made in hopes of ending this lawsuit.

For starters, all the offers to pay a reduced amount or use a payment plan were made after the initiation of this litigation in Chancery.[28] True, the communications were attempts to determine what amounts were in dispute. But that doesn't keep

---

[25] The Court is far more concerned about the content and the "purpose for which the evidence in question is being offered" than a document's label. *See Paige Cap. Mgmt., LLC v. Lerner Master Fund, LLC*, 22 A.3d 710, 726 (Del. Ch. 2011).

[26] This complaint was filed December 14, 2023. *See* D.I. 1.

[27] Pl.'s Mot. for Partial Summ. J., Ex. D (D.I. 36).

[28] *Id.*, Exs. F, G, and I.

them from being deemed compromise negotiations. Settlement negotiations and finalizing the amounts actually in dispute aren't at all mutually exclusive.[29]

It's a treacherous path Rhythm asks the Court to tread. Parsing interparty mid-litigation communications like those here for isolation of potential liability or damage admissions is navigating at a cliff's edge. And any court asked to take such journey should be wary of ruling such communications fall outside the scope of compromise negotiations,[30] disrupting the very purpose of Rule 408,[31] and stifling parties' frank discourse that lends to Delaware's preference for voluntary settlement of contested suits.[32] The Court rejects Rhythm's invite to do so here. The evidence it posits as admissions of liability or damage amounts are excluded as statements

---

[29] *See Candlewood Timber Grp. LLC v. Pan Am. Energy LLC*, 2006 WL 1382246, at *13 (Del. Super. Ct. May 16, 2006) (finding certain documents to constitute prior settlement negotiations because: "They were made after a dispute had arisen between [the parties] as to the extent of the damage, and the monetary amount of such damages, that had been caused to [Plaintiff]'s property.").

[30] *See The Chase Manhattan Bank v. Iridium Africa Corp.*, 2003 WL 22928042, *2 (D. Del. 2003) ("[I]f application of Rule 408 exclusion is doubtful, the better practice is to exclude evidence of compromise negotiations.") (citing *Affiliated Mfg., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 526 (3d. Cir. 1995)); *Candlewood Timber Grp.*, 2006 WL 1382246, at *13 (same).

[31] *See* FED. R. EVID. 408 cmt. (1974) (explaining the reason for exclusion of such evidence, thusly: "A more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes.").

[32] *See Griffith v. Stein on behalf of Goldman Sachs Grp., Inc.*, 283 A.3d 1124, 1133 (Del. 2022) (referencing *Rome v. Archer*, 197 A.2d 49, 53 (Del. 1964)) ("In general, Delaware law favors settlement of litigation."); *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.*, 2020 WL 1972857, at *5 (Del. Super. Ct. Apr. 23, 2020), *aff'd*, 2021 WL 1440204 (Del. Apr. 15, 2021) ("Delaware courts favor the negotiated settlement of contested legal disputes and enforces them as contracts."); *Clark v. Ryan*, 1992 WL 163433, at *5 (Del. Ch. June 17, 1992) ("Delaware law favors the voluntary settlement of contested suits . . .").

made during settlement negotiations.

Accordingly, Ms. Bray's motion to strike Rhythm's references to the settlement discussions is **GRANTED.**

## B. RHYTHM'S MOTION FOR ENTRY OF PARTIAL SUMMARY JUDGMENT AND PARTIAL FINAL JUDGMENT ON COUNT II ARE DENIED.

### 1. Parties' Contentions for Summary Judgment and Partial Final Judgment

Rhythm requests partial summary judgment in its favor on the indemnity claim for $864,487.98—along with prejudgment interest for the delayed escrow funds and full indemnification claim—and partial final judgment under Rule 54(b).

Rhythm insists that it is entitled to partial summary judgment for the "undisputed" indemnity costs totaling $864,487.98.[33]  Rhythm says that Ms. Bray admitted and accepted her indemnity obligations in their "payment" discussions.[34] In Rhythm's view, it would be "severely unjust to delay entering final judgment and thereby force Rhythm to continue paying Seller's legal fees for resisting undisputed claims."[35]

Ms. Bray counters that Rhythm is not entitled to partial summary judgment because Rhythm failed to provide a proper final determination of the amount actually

---

[33]  Pl.'s Mot. for Partial Summ. J. at 9-12.

[34]  *Id.* at 11.

[35]  Pl.'s Reply at 3; *See also* Pl.'s Mot. for Partial Summ. J. at 15-18.

owed.[36]  She reasons first that the $864,487.98 is disputed because any offer upon which that figure is based must be excluded under Rule 408 as a part of settlement negotiations.[37]  In addition, Ms. Bray asserts that partial final judgment is inappropriate because there has been no final decision and Rhythm has failed to show severe prejudice.[38]

## 2. Applicable Legal Standards for Summary Judgment and Partial Final Judgment

Applying Court of Chancery Rule 56, summary judgment "shall be rendered forthwith" if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[39]  As such, "[t]he Court must view the facts in the light most favorable to the non-moving party."[40]  The motion "'must be denied if there is any reasonable hypothesis by which the opposing party may recover, or if there is a dispute as to a material fact or the inferences to be drawn therefrom.'"[41]

To grant final judgment, under Rule 54(b), the movant must establish that "(1)

---

[36] Def.'s Opp'n and Mot. to Strike at 30-34.

[37] *Id.* at 24-30.

[38] *Id.* at 37-47.

[39] Del. Ch. Ct. R. 56(c).

[40] *In re Morrow Park Holding LLC*, 2020 WL 3415649, at *10 (Del. Ch. June 22, 2020) (quoting *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 100 (Del. 1992)).

[41] *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *8 (Del. Ch. June 12, 2014) (quoting *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970)).

the action involves multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally decided, and (3) . . . there is no just reason for delaying an appeal."[42]

### 3. Motion for Summary Judgment and Partial Final Judgment—Analysis

To be sure, without the use of the settlement communications as an admission of liability and a damage amount, Rhythm's asks for summary judgment and final judgment fail.

The Court finds that there are material factual disputes regarding the actual costs associated with the Murj Litigation.[43] Rhythm's argument relies upon the assertion that Ms. Bray admitted that Rhythm is entitled to $864,487.98.[44] In turn, Rhythm posits that such admission now makes the amount in question undisputed. But as the Court has found, Ms. Bray's purported admissions were made during settlement negotiations and can't be used here.[45] And without that, the amount owed

---

[42] *ITG Brands, LLC v. Reynolds Am., Inc.*, 2019 WL 5688559, at *3 (Del. Ch. Nov. 1, 2019) (alteration in original).

[43] Ms. Bray claims that the amount cannot be determined because the term "determination" is not defined in the SPA. The Court does not find this argument persuasive. The term "determination" isn't vague; it's simply the final costs of defending against the Murj Litigation because that is the only reasonable reading. *See NSI-MI Holdings, LLC v. AMETEK, Inc.*, 2023 WL 7482590, at *7 (Del. Super. Ct. Nov. 13, 2023), appeal dismissed, 312 A.3d 1206 (Del. 2024) ("Delaware courts apply the plain meaning of the contract when it's clear and unambiguous.").

[44] Pl.'s Mot. for Partial Summ. J at 9.

[45] *See Pedicone v. Thompson/Ctr. Arms Co., LLC*, 2022 WL 521378, at *3 (Del. Super. Ct. Feb. 21, 2022) (citing *Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 117 (Del. Super. Ct. 2014)) ("Upon receipt of a motion for summary judgment, the Court may consider any

is still undoubtedly in dispute. In fact, there have been many disagreements about some of the requested fees.[46] As one example, clarification of the scope of work for Holland & Knight's fees would be required before the Court can determine the actual costs of the litigation.[47] Simply put, the amount owed to Rhythm cannot be determined at this time. Partial summary judgment is not warranted.

For the very same reasons, Rule 54(b)'s requirements are also not satisfied; Rhythm cannot prove the second element—that its rights or Ms. Bray's liabilities have been finally decided.

Accordingly, Rhythm's motion for partial summary judgment and final judgment is **DENIED**.

## C. THE COURT CANNOT DETERMINE THAT PREJUDGMENT INTEREST IS NOW DUE.

Any grant of prejudgment interest would be improper at this time. Rhythm says that it is entitled to prejudgment interest on the escrow funds because Ms. Bray's release of the $500,000 that was in escrow wasn't "prompt," as the SPA

---

submissions described in Rule 56(c), unless good reason has been given to do otherwise. The Court may never, however, rely on evidence that would not be admissible at trial.").

[46] Use of the settlement discussions is permitted in this context—to show confusion and disagreement over the amount—because it is not using them "to prove liability for or invalidity of the claim or its amount." D.R.E. 408. The Court uses the contested communications for the very limited purpose of demonstrating the remaining disputes between the parties at this stage. *See generally Grunstein*, 2011 WL 378782, at *6 ("Such evidence may be admissible . . . if offered for another purpose.").

[47] Pl.'s Mot. for Partial Summ. J., Ex. D.

required.[48] In Rhythm's eyes, Ms. Bray's delivery of escrow instruction for release of the $500,000 held in the Murj Escrow can't be deemed "promptly" done  because she had no "good faith basis to dispute" that Rhythm was entitled to at least that $500,000 in escrow.[49]

Ms. Bray insists that she owes no interest because the issue is moot and the deficiencies in the first indemnification notice barred the obligation from being triggered.[50] Contrary to Ms. Bray's assertion, the issue of prejudgment interest isn't moot. But it's not yet determinable.

Under the SPA and the record developed thus far, the Court can't say the required instructions weren't "promptly delivered." Even though the SPA doesn't define "prompt" or "promptly" it does require all notices to "specify[], in reasonable detail, the nature and basis" for the request for payments from escrow to be made.[51] The First Notice was sent in July 2023.[52] It appears the parties were actively in discussion about the obligation, what was covered, and the necessary disclosure of the notice's referenced costs.[53] Then in December 2023, the escrow funds were

---

[48]  *Id.* at 9-12.

[49]  Pl.'s Mot. for Partial Summ. J at 13-14.

[50]  Def.'s Opp'n and Mot. to Strike at 34-37.

[51]  SPA § 6.5(a).

[52]  Pl.'s Mot. for Partial Summ. J. Ex. C.

[53]  *Id.*, Exs. C, E, F, G, H, I, and J.

released.[54]

Prior to the release of escrow funds, Ms. Bray requested additional information.[55] Such a request might reasonably postpone the delay of escrow funds and the Court can't say there is any sign that the request was made in "bad faith" merely to slow down the escrow release.[56] The fact that Ms. Bray only ended up disputing about $90,000 of the request doesn't of itself intimate bad faith. Indeed, it seems she had no way of knowing the amount that would be disputed until she reviewed Rhythm's records. And the fact that Ms. Bray was still a part of the company at the time some of these costs began to accrue doesn't excuse Rhythm from providing her "reasonable detail" upon request.[57] At bottom, Ms. Bray

---

[54] *See* D.I. 12.

[55] Def.'s Opp'n and Mot. to Strike at 19; *id.*, Ex. 9 (D.I. 45).

Ms. Bray alleges that one "critical" error that stalled release of the escrow fund was a misciting in the first paragraph of the first indemnification notice referencing § 6.2 rather than § 6.3. *See* Pl.'s Reply at 19-20. But that error was corrected in the notice's very next paragraph. No matter, that typo is inconsequential and has not affected the Court's determination here.

[56] *See Reddy v. 2nd Chance Treatment Centers, LLC*, 2024 WL 5088687, at *12 (Del. Ch. Dec. 12, 2024) ("In the first possible outcome, Defendants' Indemnity Escrow Claim is valid, so the Indemnity Escrow Funds are rightfully retained by the Escrow Agent until the Claim is resolved through a Joint Release Instruction or a Final Determination."); *see also* SPA § 6.5(a):

> Except as set forth in Section 6.5(c) below, each Person entitled to indemnification under Section 6.2, Section 6.3 and Section 6.4 agrees that after it becomes aware of facts giving rise to a claim by it for indemnification pursuant to this Article VI, such Indemnified Party shall assert its claim for indemnification under this Article VI (each a "Claim") by providing a written notice (a "Claim Notice") to the Person required to provide indemnification protection under this Article VI specifying, in reasonable detail, the nature and basis for such Claim.

[57] *See* SPA § 6.5(a).

investigated to verify the request, and it appears the escrow funds were released promptly upon verification.

Rhythm is also not entitled to prejudgment interest on the full indemnity claim because those amounts are disputed and uncertain at this time.

Accordingly, Rhythm isn't—at this time—entitled to any prejudgment interest on either the escrow amount or the full indemnity amount.

## III. CONCLUSION

For the foregoing reasons, Defendant Bray's motion to strike all references to settlement communications is **GRANTED**, and Plaintiff Rhythm's motion for partial summary judgment and partial final judgment is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*
_____
Paul R. Wallace, Judge*

---

\* Sitting by designation of the Chief Justice pursuant to *In re Designation of Actions Filed Pursuant to 8 Del. C. § 111* (Del. Sept. 18, 2023) (FIRST AMENDED ORDER).